UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

GILBERTSON DRAGLINES, INC.,     No. 2:08-cv-01746-MCE-EFB

      Plaintiff,

  v.                                 **MEMORANDUM AND ORDER**

OPERATING ENGINEERS HEALTH AND
WELFARE TRUST FUND FOR NORTHERN
CALIFORNIA, et al.,

      Defendants.
_____

OPERATING ENGINEERS HEALTH AND
WELFARE TRUST FUND FOR NORTHERN
CALIFORNIA, et al.,

      Counter-Claimants,

  v.

GILBERTSON DRAGLINES, INC.

      Counter-Defendant.

----oo0oo----

///
///
///
///

1

Through the present action, Plaintiff Gilbertson Draglines, Inc. ("Gilbertson Draglines" or "Plaintiff") asks the Court to determine that it is not bound to the terms of a collective bargaining agreement that Defendants, a group of Union employee benefit plans, claim created an obligation on Plaintiff's part to make contributions for Union fringe benefits. Defendants, in turn, filed their own Counterclaim for unpaid benefits at the time they answered Gilbertson's Complaint. Both sides now move for summary judgment. Jesse Gilbertson, Plaintiff's principal, claims that because he never assented to the terms of the Union agreements at issue, his company cannot be bound by the terms of the Union Master Agreement, as incorporated within the so-called "short-form" agreement signed by Mr. Gilbertson. Defendants, on the other hand, claim that the Union agreements are binding on Plaintiff as a matter of law, and that Gilbertson is accordingly liable for the contributions at issue. As set forth below, the Court concludes that triable issues of fact prevent it from granting either Plaintiff's or Defendants' Motion.

**BACKGROUND**

In March of 1996, Jesse Gilbertson, who at all times relevant to this litigation was a properly-licensed contractor, purchased a piece of heavy equipment known as a Northwest Dragline Shovel. Mr. Gilbertson, the sole proprietor of Gilbertson Dragline Service, an unincorporated entity, proceeded to use the shovel in various grading and dredging operations. He was not a Union member.

Sometime in 1999 or early 2000, Mr. Gilbertson was approached by Cal-Neva Construction for assistance on a job installing and removing rock barriers. That job, however, specified the use of Union contractors. According to Jesse Gilbertson, while he did not want to become a signatory Union contractor, he was informed by a Cal-Neva employee, Russell Turner, that he could become an "owner-operator" member of the Operating Engineers Local Union No. 3 ("Union"), not bound by the Union contract. Gilbertson Decl., ¶ 4. Turner called the Union's offices in Yuba City, California, and an agent told both him and Mr. Gilbertson that Gilbertson could indeed sign up as an owner-operator member if he supplied proof that he owned his dragline shovel. Id.

It is undisputed that Mr. Gilbertson went to the Yuba City Union hall on May 11, 2000, where he eventually spoke with a Local No. 3 business agent. Gilbertson claims he specifically told the agent that he did not want to become a Union member bound by the terms of the Master Agreement. He claims the agent acknowledged that request and asked him to sign papers described as routine for new members desiring owner-operator status. Id. at ¶ 5. Based on that representation, Gilbertson claimed he signed two agreements, the so-called "short form" agreement, and an "order to bill", without reading the documents. See Exs. A and B to the Gilbertson Decl. Gilbertson was asked to indicate on the "order to bill" that he was an "owner-operator", and to confirm that he was the only operator on payroll.

///

///

Gilbertson Decl. at ¶¶ 5-6. He claims that the agent wrote "no bill" on the form to assure him that he would not be billed for fringe benefits. Id. at ¶ 6.

According to Jesse Gilbertson, after providing the business agent with a copy of the bill of sale for the dragline shovel, he left the Union office after being there less than ten minutes. He claims he was not given copies of either the owner-operator agreement, the order to bill, or any other Union document. Id. Gilbertson states that his initial Union dues were paid by Cal-Neva, but that he has continued to pay his Union dues ever since. Id. at ¶ 7.

Defendants, for their part, have presented evidence suggesting a starkly different course of events. According to the Declaration of Travis Tweedy, who has been employed in various capacities since 1998 by the Operating Engineers Local Union No. 3 office in Yuba City, the Union's policy and procedure in assisting an individual to become an owner-operator would include the following:

    a. orally inform the contractor applicant that they must show proof of ownership of the equipment they intend to operate as an owner-operator;

    b. orally inform the contractor applicant that they must enter into an Independent Northern California Construction Agreement with the Union (commonly referred to as a "short-form agreement" or "owner-operator agreement");

    c. orally inform the contractor applicant that the Independent Northern California Construction Agreement incorporates the Master Agreement;

///
///
///

4

        d. orally inform the contractor applicant that under the terms of agreement, he must join the Union and remain a member of the Union in good standing (i.e., meaning pay his Union dues) in order to be eligible to elect not to go on the payroll of the Individual Employer that hires the owner-operator and to elect to not pay fringe benefits to the various Trust Funds for himself;

        e. orally inform the contractor applicant that under the terms of the agreement, if an owner-operator currently or in the future employs any other person other than himself to perform Operator work, the owner-operator must contribute to the various Trust Funds for fringe benefits;

        f. orally inform the contractor applicant that an owner-operator who only employs himself to operator his own equipment can choose to contribute to the various Trust Funds for fringe benefits for himself or he may waive such contributions for fringe benefits for himself;

        ....

        j. assist the contractor applicant in completing the membership application to join the Union and collect any Union dues the applicant chooses to pay at that time;

        k. assist the contractor employer applicant in completing the Independent Northern California Construction Agreement and make a photocopy for the applicant;

        l. assist the contractor applicant in completing the Order to Bill form, including review [of] whether the applicant chooses to make contributions for fringe benefits for himself;

        m. make a photocopy of the proof of ownership that the contractor applicant presented and return the original to the contractor applicant;

        n. provide the contractor applicant a copy of the Master Agreement in booklet form or confirm that the contractor applicant already has a copy of the Master Agreement;

        o. answer any questions that the contractor applicant might have concerning the rules and obligations of becoming an owner-operator.

Decl. Of Travis Tweedy, ¶ 18.

Under the terms of the short-form agreement, which incorporated the Union Master Agreement, as long as Mr. Gilbertson remained the only person performing operator work, his company would not be obligated to make fringe benefit contributions to Defendants. Plaintiff does not question the fact that the Master Agreement provides that if an owner-operator employs other individuals to perform operator work, then the owner-operator is obligated to pay fringe benefits. Gilbertson nonetheless claims that he did not know what he was signing, that he was not provided copies of the Union agreements, and that the Union agreements are consequently unenforceable against him. Defendants, on the other hand, contend that Plaintiff is bound by the agreements he signed which obligated Plaintiff to pay fringe benefit contributions if he did in fact employ other individuals.

In July of 2001, a little more than a year after Mr. Gilbertson joined the Union as an owner-operator, he incorporated his business as Gilbertson Draglines, Inc. He claims that he operated his business as a non-union shop both before and after its incorporation. Although he admits he did hire employees and never made any contributions for fringe benefits, he asserts that no employee, including himself, ever sought Union benefits for work performed on Gilbertson Draglines jobs. Gilbertson Decl., ¶ 3. Aside from paying his Union dues, he claims he had no contact whatsoever with Defendants from May of 2000 until February of 2008, when Defendants requested an audit to determine if additional contributions were in fact owed.
///
///

Defendants claim that this audit, as authorized by the Master Agreement and an incorporated Trust Agreement, revealed that Plaintiff did in fact employ other individuals between January of 2005 and March of 2008 to perform operator work. Defendants thereafter demanded that Plaintiff pay delinquent contributions which, along with interest, liquidated damages, and various fees and costs, totaled $473,708.74. Plaintiff's lawsuit for declaratory relief, seeking a judicial determination that no amount was in fact owed, followed.

**STANDARD**

The Federal Rules of Civil Procedure provide for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Rule 56(c).

7

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-587 (1986); First Nat'l Bank v. Cities Ser. Co., 391 U.S. 253, 288-289 (1968).

In attempting to establish the existence of this factual dispute, the opposing party must tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(e). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 251-52 (1986); Owens v. Local No. 169, Assoc. of Western Pulp and Paper Workers, 971 F.2d 347, 355 (9th Cir. 1987). Stated another way, "before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251 (quoting Improvement Co. v. Munson, 14 Wall. 442, 448, 20 L. Ed. 867 (1872)).

///
///
///

As the Supreme Court explained, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts...Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586-87.

**ANALYSIS**

**A. Triable Issues of Fact Preclude the Entry of Summary Judgment for Either Plaintiff or Defendants.**

In moving for summary judgment, Plaintiff argues that its case is directly analogous to the Ninth Circuit's decision in Operating Engineers Pension Trust v. Gilliam, 737 F.2d 1501 (9th Cir. 1984), and urge the Court to grant summary judgment on that basis. Defendants, on the other hand, ask the Court to look to another Ninth Circuit case, Operating Engineers Pension Trust v. Cecil Backhoe Service, Inc., 795 F.2d 1501 (9th Cir. 1986) and find that summary judgment in their favor is in fact indicated. Although the Court agrees that the facts of both Gilliam and Cecil appear to closely parallel those of the case at bar, there are nonetheless important differences between those cases and the instant matter that preclude summary judgment.

Gilliam, like this case, involves a non-union heavy equipment operator who wanted to work a union job and consequently became an "owner-operator" member. Mr. Gilliam met with a union representative and he signed the forms required to become an owner-operator without reading them.

9

Also similar to Mr. Gilbertson's version of events is Mr. Gilliam's claim 1) that the representative did not inform him that he was signing an agreement binding him to the terms of the overall collective bargaining agreement and 2) that he was not given copies of either the short-form agreement or the Union Master Agreement. Id. at 1503.

On appeal, the Ninth Circuit affirmed the district court's determination, after hearing evidence, that Gilliam did not owe the more than $365,000.00 in fringe benefit contributions sought by the union. Citing well-established principles requiring that any valid contract be premised on mutual assent, the court found that under the circumstances Gilliam reasonably believed that the short-term agreement did not bind him to the entire collective bargaining agreement. Id. at 1503-05.

The key distinction between Gilliam and this case rests with the fact that the district court made its "findings" as to what occurred between Mr. Gilliam and the union "after hearing evidence", presumably in the context of a bench trial. Id. at 1502. Here, no such factual findings have been made; instead, Plaintiff simply asks the Court to accept as uncontroverted its claim that the import of the Union agreements was not explained to Mr. Gilbertson, that he was led to believe that what he signed did not entail adherence to the collective bargaining agreement, and that he was not even given copies of the documents he did sign. All of these claims are directly countered by Defendants' evidence indicating that it was the Union's custom and practice to do just the opposite.

///

Resolution of these competing claims requires factual determinations not amenable to disposition on summary judgment. Those determinations were made in Gilliam as part of the district court's findings of fact, but they have not been made here.

The Cecil case cited by Defendants makes this Court's assessment of the matter even clearer. There, the decision states explicitly that the facts were determined by way of Findings of Fact and Conclusions of Law by the district court following a two-day bench trial. Operating Engineers Pension Trust v. Cecil, 795 F.2d at 1504. Consequently, while the Ninth Circuit found in Cecil that the owner-operator was bound by the agreements he signed, the factual predicate for that decision was made by the district court as trier of fact. Here, no such factual determination has been made, and cannot be made by this Court on summary judgment given the conflicting evidence with which it is confronted. Consequently, both Motions here must be denied.

**B. Defendants' Motion to Strike Plaintiff's Opposition as Untimely is Not Persuasive.**

Plaintiff filed its Summary Judgment Motion on November 2, 2009. Defendants thereafter, on November 16, 2009, jointly filed an Opposition to Plaintiff's Motion along with a Counter-Motion for Summary Judgment requesting that judgment be entered in Defendants' favor on both Plaintiff's Complaint and Defendants' Counterclaim. That joint filing caused Plaintiff to also file a combined response both in Opposition to Defendants' Counter-Motion and in reply to Plaintiff's Opposition to its Motion.

Because Plaintiffs' joint response was filed less than fourteen days prior to the then-scheduled hearing date of January 7, 2010, Defendants claimed that it was precluded from filing its own timely reply and consequently moved to strike Plaintiff's Opposition as untimely. Defendants further asked the Court to enter judgment on its behalf without a hearing given the untimely opposition.

Having received Defendants' objections in this regard, and recognizing that the deadlines associated with concurrently pending cross-motion filed in response to an original motion can be confusing to all concerned, the Court immediately took steps to remedy the situation by continuing the January 7, 2010 hearing dates on the Motions for Summary Judgment (which in the meantime had been continued on the Court's own motion to January 14, 2010) to February 12, 2010 in order to afford Defendants the opportunity to file a timely reply. Defendants subsequently filed their reply on January 21, 2010. All sides were consequently afforded full opportunity to be heard in this matter. Any prejudice to Defendants was ameliorated by the opportunity afforded by the Court to file a reply.

The Court's conclusion that Defendants' Motion to Strike should not be granted is underscored by the fact that even if Plaintiff's opposition was untimely, its reply was not. In the context of cross-motions for summary judgment, disposition must be made based on all the evidence submitted. See Fair Housing Council of Riverside County, Inc. v. Riverside Two, 249 F.3d 1132, 1136 (9th Cir. 2001).

///

This means that the arguments set forth in Plaintiff's Reply would have to be considered by the Court, even if the intertwined Opposition (contained within the same filing) was not. The arguments posited by Defendants simply do not make practical sense under those circumstances.

## CONCLUSION

For the reasons set forth above, triable issues of fact preclude issuance of summary judgment in favor of either Plaintiff or Defendants. The parties' Cross-Motions for Summary Judgment (Docket Nos. 29 and 30, respectively) are therefore DENIED.[1] Defendants' Request for Entry of Order for Summary Judgment (Docket No. 42) and its Motion to Strike (Docket No. 51) are also DENIED.[2]

IT IS SO ORDERED.

Dated: March 9, 2010

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE

---

[1] Because oral argument would not be of material assistance, this matter was deemed suitable for decision without oral argument. E.D. Local Rule 230(g).

[2] While the Court also recognizes that Plaintiff filed various objections to the evidence proffered by Defendants in connection with the cross-motions for summary judgment, because none of the evidence in dispute was central to the Court's decision, the Court need not specifically rule on the objections and declines to do so.